**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHERRY HILL CONSTRUCTION, INC. | * | |
| 8211 Washington Boulevard | | |
| Jessup, Maryland, 20794-0356, | * | |
| | | |
| Plaintiff, | * | Civil Action No. _____ |
| | | |
| v. | * | |
| | | |
| AMERICAN HOME ASSURANCE COMPANY | * | |
| 70 Pine Street | | |
| New York, New York, 10270, | * | |
| | | |
| Defendant. | * | |
| | | |
| Serve on: | * | |
|    Corporation Service Company | | |
|    1090 Vermont Ave., N.W. | * | |
|    Washington, DC  20005 | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Cherry Hill Construction, Inc. ("Cherry Hill"), by and through its undersigned counsel, hereby files this Complaint against American Home Assurance Company ("American Home"), and as grounds therefore states as follows:

### I.      The Parties

1.     Plaintiff Cherry Hill is a construction company organized and existing under the laws of the State of Maryland, with its principal place of business at 8211 Washington Boulevard, Jessup, Maryland, 20794-0356.

2.     Defendant American Home is a New York corporation, with its principal place of business at 70 Pine Street, New York, New York, 10270.

## II.     Jurisdiction and Venue

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(a)(1).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(a).

## III.     Facts

5.     On or about May 12, 2005, China Construction American, Inc. ("China Construction") entered into a contract with the Embassy of the People's Republic of China in the U.S.A. (the "Owner") for the construction of a project known as Embassy of the People's Republic of China in the U.S.A., Chancery Building, 3505 International Place, NW, Washington, D.C., 20008 (the (the "Construction Contract").

6.     The obligation of China Construction to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract was covered by Payment Bond No. 279675, issued by American Home as surety, in the amount of $30,000,000 (the "Payment Bond"). A copy of the Bond is attached hereto as Exhibit A.

7.     On or about August 4, 2005, Cherry Hill, as subcontractor, entered into a Subcontract Agreement with China Construction, as contractor, to perform excavation, earthwork and other items of work for the Construction Contract (the "Subcontract"). A copy of the Subcontract is attached hereto as Exhibit B.

8.     The payment provisions of the Subcontract require China Construction to remit payments to Cherry Hill after it receives payment from the Owner.  These provisions afford China Construction a reasonable time to receive payment from the Owner, after which China Construction is obligated to pay Cherry Hill all amounts properly due and owing, regardless of whether China Construction receives payment from the Owner.

2

9.    Pursuant to Section 15.2 of the Subcontract, payments due and owing under the Subcontract bear interest from the date payment was due at a rate of 4 per cent per annum.

10.    Cherry Hill commenced work under the Subcontract in August 2005, and last furnished labor or materials to the Project on May 10, 2006.

11.    The contract balance due and owing to Cherry Hill under the Subcontract is $547,123.60.  Notwithstanding Cherry Hill's completion of its work in accordance with the terms and provision of the Subcontract, to date, China Construction has failed to remit payment of these contract funds to Cherry Hill.

12.    More than a reasonable time has passed since Cherry Hill achieved substantial completion of the Project in April, 2006, and final completion of the Project in May, 2006. Cherry Hill is entitled to payment from China Construction of the outstanding balance of $547,123.60, plus interest.

## COUNT I
### (Breach Of Payment Bond)

13.    Cherry Hill incorporates by reference paragraphs 1 through 12 above.

14.    Cherry Hill had a direct contract with China Construction to furnish labor, materials or equipment for use in China Construction's performance of the Construction Contract, and as such, meets the definition of "claimant" set forth in Paragraph 15.1 of the Payment Bond.

15.    By letter dated April 11, 2007, and pursuant to Paragraph 4.1 of the Payment Bond, Cherry Hill gave notice to American Home, and sent a copy to the Owner, stating that a claim was being made under the Payment Bond for the amount due and owing of $594,099.61. The claimed amount included change order amounts totaling $46,976.01 which have been

remitted by China Construction to Cherry Hill, and which reduce the balance due and owing to Cherry Hill to $547,123.60, plus interest.

16.    China Construction has not remitted payment to Cherry Hill per the Subcontract of the outstanding balance of $547,123.60, plus interest.

17.    American Home has not remitted payment to Cherry Hill per the Payment Bond of the outstanding balance owed by China Construction to Cherry Hill of $547,123.60, plus interest.

18.    Under the terms and provisions of the Payment Bond, American Home is obligated to remit payment to Cherry Hill in the amount of $547,123.60, representing the amount due and owing to Cherry Hill for labor, materials and equipment furnished to China Construction for use in performing the Construction Contract, plus interest.

WHEREFORE, Cherry Hill demands judgment against American Home in the amount of $547,123.60, plus interest.

Dated:  May 2, 2007                    Respectfully submitted,


*/s/ Joseph C. Kovars*
Joseph C. Kovars (D.C. Bar No. 253211)
Jay N. Bernstein
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 685-1120 (telephone)
(410) 547-0699 (facsimile)


#1898491

4

# Exhibit A

# Willis

Bond No. 279675

Document A312

# Payment Bond

*Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.*

CONTRACTOR (Name and Address):
CHINA CONSTRUCTION AMERICA, INC.
525 Washington Boulevard,
Jersey City, NJ 07310

SURETY (Name and Principal Place of Business):
American Home Assurance Company
70 Pine Street
New York, NY 10270

OWNER (Name and Address):
The Embassy of PRC in USA
2300 Connecticut Avenue, NW
Washington, DC 20008

CONSTRUCTION CONTRACT
  Date:
  Amount:    $30,000,000.00
  Description (Name and Location): M-1, Chancery Building-Embassy of PRC in USA

BOND
  Date (Not earlier than Construction Contract Date): July 26, 2005
  Amount: $10,400,000.08
  Modifications to this Bond:    ☒ None                    ☐ See Page 6

CONTRACTOR AS PRINCIPAL
Company:                         (Corporate Seal)
CHINA CONSTRUCTION AMERICA, INC.

Signature:
Name and Title:

SURETY
Company:                         (Corporate Seal)
American Home Assurance Company

Signature:
Name and Title:
Jeannette Shipman / Attorney-in-Fact

(Any additional signatures appear on page 6)

(FOR INFORMATION ONLY-Name, Address and Telephone)
AGENT or BROKER:
Willis of New York, Inc.
7 Hanover Square
New York, NY 10004-2594

OWNER'S REPRESENTATIVE (Architect, Engineer or
other party):

Printed in cooperation with The American Institute of Architects (AIA) by Willis. Willis vouches that the language in the document conforms
exactly to the language used in AIA Document A312, December 1984 Edition. Third Printing March 1987. Performance and Payment Bond
WC18538

4

1   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2   With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3   With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4   The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5   If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6   When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7   The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8   Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9   The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10  The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11  No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12  Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13  When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

Printed in cooperation with The American Institute of Architects (AIA) by Willis. Willis vouches that the language in the document conforms exactly to the language used in AIA Document A312, December 1984 Edition. Third Printing March 1987 Performance and Payment Bond
WC1853C

Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**15 DEFINITIONS**

15.1   Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract,

architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2   Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3   Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL                                    SURETY
Company:                          (Corporate Seal)        Company:                          (Corporate Seal)


Signature: _____                         Signature: _____
Name and Title:                                           Name and Title:
Address:                                                  Address:

Printed in cooperation with The American Institute of Architects (AIA) by Willis. Willis vouches that the language in the document conforms
exactly to the language used in AIA Document A312, December 1984 Edition.  Third Printing March 1987  Performance and Payment Bond
WC1653D

6

FEB-01-2007  11:19   CHERRY HILL CONSTRUCTION   P.005

**American Home Assurance Company**
Executive Offices
70 Pine Street
New York, NY 10270

## STATUTORY
## FINANCIAL STATEMENT
### as of DECEMBER 31, 2003

| Assets | | Liabilities | |
|---|---|---|---|
| Bonds | $ 5,009,415,542 | Reserve for Losses and Loss Expenses | $ 6,522,442,760 |
| Stocks | 2,857,754,324 | Reserve for Unearned Premiums | 3,300,024,771 |
| Collateral Loans | | Reserve for Expenses, Taxes, | |
| Cash & Short-Term Investments | 111,419,272 | Licenses and Fees | 121,209,223 |
| Agents' Balances or Uncollected Premiums | 367,077,476 | Provision for Reinsurance | 266,943,080 |
| Funds Held by Ceding Reinsurers | 1,182,363,090 | Funds Held Under Reinsurance | |
| Reinsurance Recoverable on Loss Payments | 1,193,937,235 | Treaties | 1,224,464,024 |
| Equities & Deposits in Pools & Associations | 382,996,388 | Other Liabilities | 589,797,861 |
| Other Adjusted Assets | 3,853,707,665 | Capital Stock | 25,425,810 |
| | | Surplus | 3,598,473,503 |
| **TOTAL ASSETS** | **$ 15,948,770,992** | **TOTAL POLICYHOLDERS' SURPLUS** | 3,621,899,313 |
| | | **TOTAL LIABILITIES AND POLICYHOLDERS' SURPLUS** | **$ 15,948,770,992** |

Bonds and stocks are valued in accordance with the basis adopted by the National Association of Insurance Commissioners. Securities carried at $ 1,305,353,885 in the above statement are deposited as required by law or otherwise pledged.

### CERTIFICATE

John Q. Doyle, President, and Robert J. Salter, Comptroller, of American Home Assurance Company being duly sworn, each for himself deposes and says that they are the above described officers of the said Company and that on the 31st day of December, 2003, the Company actually possessed the assets set forth in the foregoing statement and that such assets were available for the payment of losses and claims and held for the protection of its policyholders and creditors, except as hereinbefore indicated, and that the foregoing statement is a correct exhibit of such assets and liabilities of the said Company on the 31st day of December, 2003, according to the best of their information, knowledge and belief respectively.

_(signature)_   President          _(signature)_   Comptroller

STATE OF NEW YORK } ss.:
COUNTY OF NEW YORK

On the ___ day of March, 2004, before me came the above named officers of American Home Assurance Company to me known to be the individuals and officers described herein, and acknowledged that they executed the foregoing instrument and affixed the seal of said corporation thereto by authority of their office.

_(signature)_

31075 (3/03)
JOHN K. SCHILD
Notary Public, State of New York
No. 01SC6028011
Qualified in Kings County
Commission Expires Dec. 11, 2005

FEB-01-2007  11:20    CHERRY HILL CONSTRUCTION    PAGE 10
07727720UJ  10.10    1201070073/    GGA INC.

**American Home Assurance Company**
**National Union Fire Insurance Company of Pittsburgh, Pa.**
Principal Bond Office: 70 Pine Street, New York, N.Y. 10270

**POWER OF ATTORNEY**

No. 01-B-50609

**KNOW ALL MEN BY THESE PRESENTS:**

That American Home Assurance Company, a New York corporation, and National Union Fire Insurance Company of Pittsburgh, Pa., a Pennsylvania corporation, does each hereby appoint

---: of --- **Marion R. Vail, Joan B. Finney, Jeannette Porrini, Stacy Rivera, Diane R. Cardini: of Farmington, Connecticut** ---

its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business, and to bind the respective company thereby.

**IN WITNESS WHEREOF,** American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. have each executed these presents

this 23rd day of August, 2004.

Peter A. Scarpati, Vice President

STATE OF NEW YORK    }
COUNTY OF NEW YORK  }ss.

On this 23rd day of August, 2004 before me came the above named officer of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa., to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seals of said corporations thereto by authority of his office.

JOSEPH E. NOZZOLIO
Notary Public, State of New York
No. 01-NO4652734
Qualified in Westchester County
Term Expires Jan. 31, 2006

**CERTIFICATE**

Excerpts of Resolutions adopted by the Boards of Directors of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. on May 18, 1976:

"RESOLVED, that the Chairman of the Board, the President, or any Vice President be, and hereby is, authorized to appoint Attorneys-in-Fact to represent and act for and on behalf of the Company to execute bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, and to attach thereto the corporate seal of the Company, in the transaction of its surety business;

"RESOLVED, that the signatures and attestations of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed with respect to any bond, undertaking, recognizance or other contract of indemnity or writing obligatory in the nature thereof;

"RESOLVED, that any such Attorney-in-Fact delivering a secretarial certification that the foregoing resolutions still be in effect may insert in such certification the date thereof, said date to be not later than the date of delivery thereof by such Attorney-in-Fact."

I, Elizabeth M. Tuck, Secretary of American Home Assurance Company and of National Union Fire Insurance Company of Pittsburgh, Pa. do hereby certify that the foregoing excerpts of Resolutions adopted by the Boards of Directors of these corporations, and the Powers of Attorney issued pursuant thereto, are true and correct, and that both the Resolutions and the Powers of Attorney are in full force and effect.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the facsimile seal of each corporation

this 26 day of July, 2005

Elizabeth M. Tuck, Secretary

65166 (4/96)

TOTAL P.006

# Exhibit B

# ☷ AIA® Document A401™ – 1997

## *Standard Form of Agreement Between Contractor and Subcontractor*

AGREEMENT made as of the <u>fourth</u> day of <u>August</u> in the year <u>Two Thousand and Five</u>
*(In words, indicate day, month and year)*

BETWEEN the Contractor:
*(Name, address and other information)*

<u>CHINA CONSTRUCTION AMERICA, INC.</u>
<u>Newport Tower, Suite 2688</u>
<u>525 Washington Boulevard</u>
<u>Jersey City, NJ  07310</u>
<u>Telephone Number: (201) 876-2788</u>
<u>Fax Number:  (201) 876-6737</u>

and the Subcontractor:
*(Name, address and other information)*

<u>Cherry Hill Construction, Inc.</u>
<u>8211 Washington Blvd.</u>
<u>Jessup, MD  20794</u>
<u>410-799-3577</u>
<u>410-799-5483</u>

The Contractor has made a contract for construction dated:
<u>May 12, 2005</u>

With the Owner:
*(Name, address and other ~~information)~~information)*<u>EMBASSY OF THE PEOPLE'S</u>
<u>REPUBLIC OF CHINA IN THE U.S.A.</u>
<u>2300 Connecticut Avenue, NW</u>
<u>Washington, D.C.  20008</u>
<u>Telephone Number: (202) 328-2504Fax Number: (202) 328-2582</u>

For the following Project:
*(Include detailed description of Project, location and address)*
<u>EMBASSY OF THE PEOPLE'S REPUBLIC OF CHINA IN THE UNITED STATES OF</u>
<u>AMERICA</u>
<u>CHANCERY BUILDING</u>
<u>3505 International Place, NW</u>
<u>Washington, D.C.  20008</u>

which Contract is hereinafter referred to as the Prime Contract and which provides for the
furnishing of labor, materials, equipment and services in connection with the construction
of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner
and Contractor (from which compensation amounts may be deleted) and the other Contract
Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:
*(Name, address and other information)*

This document has important
legal consequences.
Consultation with an attorney
is encouraged with respect to
its completion or modification.

This document has been
approved and endorsed by the
American Subcontractors
Association and the Associated
Speciality Contractors, Inc.

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute
of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized**
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1
which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                                      (2148377134)

1

PEI PARTNERSHIP ARCHITECTS with I.M. PEI ARCHITECT
257 Park Avenue South
New York, NY  10010
(212) 674-9000
(212) 674-5900

The Contractor and the Subcontractor agree as follows.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                              (2148377134)

2

## ARTICLE 1  THE SUBCONTRACT DOCUMENTS

§ 1.1 The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16. (6) An agreed on construction time schedule. (7) Mutually signed documents.

§ 1.2 Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

§ 1.3 The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

§ 1.4 The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

## ARTICLE 2  MUTUAL RIGHTS AND RESPONSIBILITIES

§ 2.1 The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Section 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

§ 2.2 The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement. Subcontractor will provide a list of all Sub-subcontractors/Major Suppliers. Subcontractor is not allowed to change Sub-subcontractors/Major suppliers without prior written approval of the Contractor.

## ARTICLE 3  CONTRACTOR
### § 3.1 SERVICES PROVIDED BY THE CONTRACTOR

§ 3.1.1 The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Section 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

§ 3.1.2 The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:                                                                                    (2148377134)

3

direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor. <u>Subcontractor shall obtain prior approval for designated storage areas.</u>

**§ 3.1.3** Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

## § 3.2 COMMUNICATIONS

**§ 3.2.1** The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**§ 3.2.2** The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor. <u>The subcontractor shall designate in writing, prior to commencement of work, a person to act as a Subcontractor's representative. This person shall have complete authority to transmit instructions, receive information and shall be responsible for interpreting and defining Contractor's policies and have authority to act on behalf of the Subcontractor with respect to the services provided. Contractor shall be provided notice in the event of a change in Subcontractor's representative.</u>

**§ 3.2.3** The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**§ 3.2.4** If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws. <u>. The Contractor states and the Subcontractor acknowledges that the Contractor does not specialize in and have not been trained in the discovery, abatement, handling, removal, or disposal of hazardous materials in any form which might be present at the project site including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.</u>

**§ 3.2.5** The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**§ 3.2.6** If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor. <u>Subcontractor agrees to pay any legal expenses involved.</u>

## § 3.3 CLAIMS BY THE CONTRACTOR

**§ 3.3.1** Liquidated damages for delay, if provided for in Section 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.

**§ 3.3.2** The Contractor's claims for services or materials provided the Subcontractor shall require:

    .1    seven days' prior written notice except in an emergency;

    .2    written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

## § 3.4 CONTRACTOR'S REMEDIES

**§ 3.4.1** If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor. <u>Contractor shall not be liable for undiscovered defects in Subcontractor's materials or work product</u>

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:     (2148377134)

## ARTICLE 4  SUBCONTRACTOR
### § 4.1 EXECUTION AND PROGRESS OF THE WORK
§ 4.1.1 The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

§ 4.1.2 The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

§ 4.1.3 The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

§ 4.1.4 The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.  Work schedules and status reports shall be submitted on both a weekly and monthly basis to Contractor. Daily reports to be submitted weekly.

§ 4.1.5 The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

§ 4.1.6 The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

§ 4.1.7 The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

§ 4.1.8 The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

### § 4.2 LAWS, PERMITS, FEES AND NOTICES
§ 4.2.1 The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

§ 4.2.2 The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

### § 4.3 SAFETY PRECAUTIONS AND PROCEDURES
§ 4.3.1 The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

§ 4.3.2 If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:                                                                                              (2148377134)

employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**§ 4.3.3** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

**§ 4.3.4** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

## § 4.4 CLEANING UP
**§ 4.4.1** The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

**§ 4.4.2** As provided under Section 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

## § 4.5 WARRANTY
**§ 4.5.1** The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

## § 4.6 INDEMNIFICATION
**§ 4.6.1** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.

**§ 4.6.2** In claims against any person or entity indemnified under this Section 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the

**AIA Document A401™– 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                                (2148377134)

Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

## § 4.7 REMEDIES FOR NONPAYMENT

§ 4.7.1 If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

## ARTICLE 5   CHANGES IN THE WORK

§ 5.1 The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

§ 5.2 The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

§ 5.3 The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6   MEDIATION AND ARBITRATION

## § 6.1 MEDIATION

§ 6.1.1 Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 6.1.2 The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 6.1.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:    (2148377134)

## § 6.2 ARBITRATION

**§ 6.2.1** Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.

**§ 6.2.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**§ 6.2.3** A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**§ 6.2.4** Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 6.2.5** Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**§ 6.2.6** Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7   TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT
### § 7.1 TERMINATION BY THE SUBCONTRACTOR
**§ 7.1.1** The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### § 7.2 TERMINATION BY THE CONTRACTOR
**§ 7.2.1** If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within ~~seven~~ three days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~seven~~ three days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. ~~If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor.~~ If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

**§ 7.2.2** If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                      (2148377134)

§ 7.2.3 Upon receipt of written notice of termination, the Subcontractor shall:
- .1     cease operations as directed by the Contractor in the notice;
- .2     take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
- .3     except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

§ 7.2.4 In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

### § 7.3 SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE
§ 7.3.1 The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

§ 7.3.2 An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:
- .1     that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;
- .2     that an equitable adjustment is made or denied under another provision of this Subcontract.

### § 7.4 ASSIGNMENT OF THE SUBCONTRACT
§ 7.4.1 In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to a replacement contractor of the ~~Owner, with the Owner's agreement,~~ Owner's choosing which shall be a US Company, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

§ 7.4.2 The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

## ARTICLE 8   THE WORK OF THIS SUBCONTRACT
§ 8.1 The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*


## ARTICLE 9   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ 9.1 The Subcontractor's date of commencement is the date from which the Contract Time of Section 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.
(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA⁵ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA⁵ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                                      (2148377134)

**§ 9.2** Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**§ 9.3** The Work of this Subcontract shall be substantially completed not later than
*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

| ~~Portion of Work~~ Portion of Work | ~~Substantial Completion date~~ Phased Completion date |
|---|---|
| Ready to dig footing  1-8 (LD $2,000 per day) | 200 days after contract date |
| Finish footing  1-8  (LD $2,000 per day) | 215 days after contract date |
| Finish footing  8-11 (LD $2,000 per day) | 225 days after contract date |
| Finish footing 11-15/mass excavation (LD $2,000 per day) | 240 days after contract date |
| Finish footing 15-19 (LD $2,000 per day) | 255 days after contract date |
| Finish footing 19-23 / whole contract  (LD $10,000 per day) | 280 days after contract date |

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*
"Contractor and Subcontractor agree that the amount of actual damages sustained by Contractor and Subcontractor in the event of late completion of the Project is difficult to ascertain.  Accordingly, Contractor and Subcontractor hereby agree that if Subcontractor fails to perform in accordance with this Agreement and such failure results in Substantial or Interim Completions being achieved on dates later than established above, as adjusted as set forth herein, then Liquidated Damages , in the amounts set forth above, shall be payable to Contractor by Subcontractor in lieu of actual damages.  In no event shall Contractor's actual or consequential damages be recoverable from Subcontractor, and in no event shall the total of all Liquidated Damages assessed against Subcontractor for the entire Project exceed $1,000,000.  It is agreed Subcontractor's late completion of an interim milestone shall be excuseable if such delay is determined by the Contractor to not impact the progress of the foundation contractor."

**§ 9.4** With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract. Therefore, sufficient labor and materials must be provided at all times to meet GC's Construction Schedule.  This Subcontractor shall take whatever steps necessary, including additional manpower, equipment, overtime, shifts, etc. at its sole cost and expense, to perform its work in a time frame and sequence to meet the Schedule.

**§ 9.5** No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Section 5.3.

## ARTICLE 10   SUBCONTRACT SUM
**§ 10.1** The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of (-), ~~subject~~ ten million five hundred thirty seven thousand nine hundred twenty six dollars and no cents  ($ 10,537,926.00),subject to additions and deductions as provided in the Subcontract Documents.

**§ 10.2** The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

**§ 10.3** Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|
| See Exhibit H | | |

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects.  All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000188784_1 which expires on 7/7/2006, and is not for resale.
User Notes:                                                                                                                        (2148377134)

## ARTICLE 11  PROGRESS PAYMENTS

§ 11.1 Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

§ 11.2 The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:

A draft copy is due to CCA by the 25th of each month. Hard copies are due to CCA by the first of each month.

§ 11.3 Provided an application for payment is received by the Contractor not later than the Twenty-fifth day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Sections 11.7, 11.8 and 11.9.

§ 11.4 If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

§ 11.5 Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

§ 11.6 Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

§ 11.7 Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

§ 11.7.1 Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

§ 11.7.2 Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:                                                                                        (2148377134)

§ **11.7.3** Subtract the aggregate of previous payments made by the Contractor; and

§ **11.7.4** Subtract amounts, if any, calculated under Section 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

§ **11.8** Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

### § 11.9 SUBSTANTIAL COMPLETION
§ **11.9.1** When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

### ARTICLE 12   FINAL PAYMENT
§ **12.1** Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. ~~If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.~~
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

N/A

§ **12.2** Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

### ARTICLE 13   INSURANCE AND BONDS
§ **13.1** The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

**Type of insurance**                         **Limits of liability ($ 0.00)**
See Exhibit E

§ **13.2** Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

§ **13.3** Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                                (2148377134)

continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

**§ 13.4** The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**§ 13.5** The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

**§ 13.6** Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*
Subcontractor is required to furnish Performance Bond and Payment Bond in the Sum of 100% of the subcontract amount and cost is included in subcontract sum.

| Bond type | Bond amount ($ 0.00) | Bond delivery date | Bond form |
|---|---|---|---|
| | | | |

**§ 13.7 PROPERTY INSURANCE**
**§ 13.7.1** When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.

**§ 13.7.2** If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

**§ 13.7.3** Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

**§ 13.8 WAIVERS OF SUBROGATION**
**§ 13.8.1** The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**ARTICLE 14   TEMPORARY FACILITIES AND WORKING CONDITIONS**
**§ 14.1** The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:

| Temporary Facility, Equipment or Service | Cost, if any ($ 0.00) |
|---|---|
| | |

**§ 14.2** Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
**User Notes:**                                                                                                         (2148377134)

**ARTICLE 15  MISCELLANEOUS PROVISIONS**

§ 15.1 Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

§ 15.2 Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

4.00%  per annum

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 15.3 Retainage and any reduction thereto is as follows:
The contractor shall retain ten percent (10%) of the total funds to be paid to the Subcontractor under this agreement. The retainage withheld monthly on the aggregated sum of work performed and materials stored shall automatically be reduced to 5% at substantial completion upon receipt of AIA Form G707A (Consent of Surety to Reduction in or Partial Release of Retainage) and the issuance of the Certificate of Substantial Completion by the Architect.

§ 15.4 The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.
15.4.1   Not withstanding the provisions of 15.4, it is expressly agreed that the Subcontractor shall be obligated for:

(a)  that portion of any damage claim asserted by other subcontractors or material suppliers against the Contractor, for such damage is attributable to the Subcontractor's faulty or improper performance; and

(b)  such other losses and expenses, including those in its own organization and operation, which Contractor may incur because of Subcontractor's faulty or improper performance.

**ARTICLE 16  ENUMERATION OF SUBCONTRACT DOCUMENTS**

§ 16.1 The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

§ 16.1.1 This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

§ 16.1.2 The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

§ 16.1.3 The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

**Modification**                                                      **Date**

§ 16.1.4 Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

Exhibit A – Clarification Letter

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
User Notes:                                                                                             (2148377134)

Exhibit B – List of Drawings
Exhibit C – List of Specifications
Exhibit D – List of Addendum
Exhibit E – Insurance Requirement
Exhibit F – General Rules
Exhibit G – Lien Waiver
Exhibit H – Unit Prices
Exhibit I – Subcontractor's Major Sub-Subcontractors and Suppliers List

This Agreement entered into as of the day and year first written above.

| | |
|---|---|
| **CONTRACTOR** *(Signature)* | **SUBCONTRACTOR** *(Signature)* |
| China Construction America, Inc. | Cherry Hill Construction, Inc. |
| *(Printed name and title)* | *(Printed name and title)* |
| Jock Yang, V.P. | DAVID B. OPENSHAW, V.P. |

**AIA Document A401™ – 1997. Copyright** © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2006, and is not for resale.
(2148377134)
**User Notes:**

## *Certification of Document's Authenticity*
### *AIA® Document D401™ – 2003*

I, , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with this certification at 08:33:10 on 08/04/2005 under Order No. 1000186784_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A401™ -- 1997 - Standard Form of Agreement Between Contractor and Subcontractor, as published by the AIA in its software, other than changes shown in the attached final document by underscoring added text and striking over deleted text.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

**AIA Document D401™ – 2003. Copyright © 1992 and 2003** by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:33:10 on 08/04/2005 under Order No.1000186784_1 which expires on 7/7/2005, and is not for resale.               (2148377134)
**User Notes:**

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

## Clarification letter

1. It is understood that the rock at foundation and slab subgrades may be weathered, steeply dipping, and thinly layered and that consequently acceptable bearing as defined by the specifications will be determined by Weidlinger and may require additional excavation, which shall not be the responsibility of the Subcontractor unless excessive fragmentation is caused by the Subcontractor.

2. Surface tolerances for foundations and slab subgrades shall be 6" minus. The Subcontractor will not be responsible for additional concrete or lean concrete at areas that may exceed 6" minus or that may be uneven, provided that the total additional quantity of concrete for the project does not exceed a calculated volume for 6" across the entire bottom.

3. If additional nails are required due to slab elevation changes reflected in the 7 drawings issued by the Contractor on 7/25/05, these will be added at proposed unit prices.

4. Excavation of the upper level footings south of column line H will be scheduled so that the Subcontractor has truck access to that area of the site from Van Ness Street, however, the scheduled date shall be after 215 day from the contract date.

5. Disposal of spoils generated by other trades during foundation excavation may be ordered on unit price basis.

6. Handling of hazardous and /or contaminated materials is by unit prices only.

7. Traffic "signal" as used in Specifications means "signs".

8. Detensioning and/or removal of support of excavation system is not included.

9. Restoration of hardscape and lawn area around the site is not included.

10. Excavation/SOE for front retaining wall is not included.

11. Project permits (building, excavation, sediment control, public space, roadway) will all be provided by others.

12. The Subcontractor shall ensure that from the 215th day of this Contract no construction, i.e. blasting, will be performed provided such performance would disturb the construction of building foundation and structure.

13. The Owner and the Contractor will not take any responsibility caused by either drilling or blasting or any other method and means, i.e. Down-the-hole hammer, executed by the Subcontractor.

14. Footings excavation for two tower cranes are included in this contract, footing for tower crane on column line 7 shall be finished by the 215th day of this Contract, specifications for footing of tower crane will be provided later.

15. The Subcontractor confirms the Contract price is based on bid documents and the 7 drawings issued by the Contractor on 7/25/05.

16. It is understood that the 7 drawings issued by the Contractor on 7/25/05 changes the elevation of the subgrade of foundation and slab on grade, and also changes the shape of foundation. All these changes will be reflected by construction drawings to be issued by Weidlinger.

17. The Contractor and the Subcontractor will share the saving in 50/50 generated by value engineering of the support of excavation systems initiated by the Subcontractor.

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

18. It is agreed that the Subcontractor will submit within ten (10) days after signing the Contract the Indemnification Letter to CCA, CPM Schedule, Work Plan, Submittal Schedule, Schedule of Value, Name and Resume of Key Personnel, Name and Introduction of Major Sub-Subcontractors.

19. It is agreed that location and dimension of construction entrances showed on TCP drawing shall accommodate with existing staging area entrance, shop drawing shall be based on field measurement.

20. It is agreed that all testing and monitoring required by Specification and applicable law shall be conducted and paid for by the Subcontractor.

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

# LIST OF DRAWINGS

**IT IS UNDERSTOOD THAT FINAL CONSTRUCTION DRAWINGS ARE TO BE ISSUED BY WEIDLINGER BASED ON REVISON DRAWING ISSUED BY CCA ON 7/25/05, THE FOLLOWING LIST OF DRAWINGS ARE FOR REFERENCES ONLY.**

## GENERAL STRUCTURAL

| | |
|---|---|
| S-001 | General Notes and Design |
| S-100 | Foundation Plan Basement 5 and Part Basement 4, 3, and 2 |
| S-200A | Foundation Plan Basement 5 and Part Basement 4, 3, and 2 - West |
| S-200B | Foundation Plan Basement 5 and Part Basement 4, 3, and 2 – East |
| S-500 | Footing Schedule and Details |
| S-802 | Typical Details 3 |

## SUPPORT OF EXCAVATION

| | |
|---|---|
| S-900 | Support of Excavation General Notes |
| S-901 | Support of Excavation for Basement 5 and 4 – Plan |
| S-902 | Support of Excavation for Basement 3, 2 and 1 – Plan |
| S-903 | Support of Excavation – Sections |
| S-904 | Support of Excavation – Sections |
| S-905 | Support of Excavation – Sections |
| S-906 | Support of Excavation – Wall Elevations |
| S-907 | Support of Excavation – Wall Elevations |
| S-908 | Support of Excavation – Secant Pile Wall Layout |
| S-909 | Support of Excavation – Sections and Details |
| S-910 | Support of Excavation – Walers and Struts – Layout and Details |
| S-911 | Support of Excavation – Walers and Struts – Layout and Details |
| S-912 | Support of Excavation – Soil Nail and Rock Bolt Details |
| S-913 | Support of Excavation – Soil Nail and Rock Bolt Details |

## EROSION AND SEDIMENT CONTROL DRAWINGS (ESC)

| | |
|---|---|
| ESC-0 | General Notes and Cover Sheet |
| ESC-1 | Existing Condition |
| ESC-2 | Proposed Condition |
| ESC-3 | Initial ESC and Sequence of Construction |
| ESC-4 | ESC for SOE and Sequence of Construction |
| ESC-5 | Final ESC and Sequence of Construction |
| ESC-6 | Details |
| ESC-7 | Details |

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

ESC-8          Details

**TRAFFIC CONTROL PLAN (TCP)**

TCP-1          Traffic Control Plan

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

# LIST OF SPECIFICATIONS

## DIVISION 00 – BIDDING AND CONTRACT REQUIREMENTS

| | |
|---|---|
| 00100 | Cover Page |
| 00200 | Project Directory |
| 00300 | Table of Contents |
| 00400 | Index of Drawings |
| 00500 | Invitation for Bids |
| 00600 | Instruction to Bidders – AIA Document A701 (1997 Edition) |
| 00650 | Supplementary Instructions to Bidders |
| 00700 | Bid Form |

## CONTRACT DOCUMENTS

**CD.**        **Contract Documents**
Standard Form of Agreement between Contractor and Subcontractor
AIA Document A401, 1997 Edition
General Conditions of the Contract for Construction
AIA Document A201, 1997 Edition

## DIVISION 1 – GENERAL REQUIREMENTS

| | |
|---|---|
| 01110 | Summary of Work |
| 01140 | Work Restrictions |
| 01250 | Contract Modification Procedures |
| 01290 | Payment Procedures |
| 01311 | Coordination |
| 01312 | Progress Meetings |
| 01320 | Construction Progress Documentation |
| 01330 | Submittals |
| 01400 | Quality Requirements |
| 01410 | Testing and Inspection |
| 01420 | References |
| 01500 | Construction Facilities and Temporary Controls |
| 01570 | Traffic Regulation |
| 01600 | Materials and Equipment |

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

| | |
|---|---|
| 01700 | Execution Requirement |
| 01730 | Operating and Maintenance Data |
| 01731 | Cutting and Patching |
| 01770 | Close-out Procedures |

## DIVISION 2 - SITE WORK

| | |
|---|---|
| 02200 | Earthwork |
| 02201 | Instrumentation and Monitoring |
| 02205 | Blasting |
| 02230 | Support of Excavation |
| 02240 | Dewatering |
| 02262 | Soil Nail Wall |
| 02265 | Secant Pile Wall |
| 02491 | Rock Bolts |

## DIVISION 3 – CONCRETE

| | |
|---|---|
| 03305 | Shotcrete |

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

---

### List of Addendum

Addendum #1, 6/3/05: Revised TCP1 drawing 5/12/05
Addendum #2, 6/21/05: Questions and Answers, additional drawings.


Note:  FINAL   CONSTRUCTION   DRAWINGS   ARE   TO   BE   ISSUED   BY
WEIDLINGER.

Chancery Building                                                    EXHIBIT E
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

# Insurance Requirements

**CCA requires all subcontractors and/or suppliers to carry liability insurance according to contract documents and not less than CCA's limits.**

**It is the Subcontractor/Supplier's responsibility to carry Property Insurance to protect him against loss or damage of materials and equipments on the site (not incorporated into the construction), stored off site or in transit.**

**The Subcontractor/Supplier must list the Owner, the Architect and China Construction America, Inc. as additional insured.**

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

# GENERAL RULES

Subcontractor agrees to conform to the following safety policies in general. These policies will be strictly enforced, and violators will be asked to leave the project site. Specific rules that will be enforced are:

1.  No glass containers of any kind allowed on site (soft drink bottles, oil or gas containers, etc.)

2.  No drinking or drugs. No warning will be given, and violators will be dismissed immediately from the job site.

3.  Hard hats must be worn at all times by everyone in the work area.

4.  Everyone must wear shirts, long pants, and appropriate footwear. No tank tops, cut-offs, tennis shoes, etc. No provocative T-shirts.

5.  Personal vehicles shall park in designated areas.

6.  Telephone messages will be taken on incoming calls for emergencies only. Field office personnel will not deliver routine personal messages.

7.  All accidents, regardless of severity, must be reported to the Contractor immediately.

8.  Only authorized personnel are allowed in work areas. All visitors must report to the project site office and sign a liability release.

9.  Goggles or shields must be worn when burning, cutting, grinding, chipping, welding, etc. is taking place.

10. Only operators of equipment should ride on the equipment. No one should hitch rides on equipment being moved.

11. All power tools, drop cords, and equipment will be inspected daily for safe operating conditions. Those found unsafe will not be operated until repaired.

12. All flammable liquids must be in approved safety containers logged in at the project site office (new OSHA rule).

13. No open fires or rubbish burning is allowed unless prior approval is given by General Contractor.

14. No radios will be allowed with the exception of two-way radios.

Initial: _____

Initial: _____

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

15. The Subcontractor is to provide safety rails as required to maintain safety. Subcontractor shall be responsible for replacement of safety rails that are removed or damaged in connection with his work and shall be responsible for safety regulation violations created by such removal or damage.

16. The Subcontractor is to provide all scaffolding and ladders to complete his work. This equipment shall meet OSHA standards for safe installation of materials and equipment.

17. The Subcontractor shall in no way interfere with or endanger in normal pedestrian and vehicular traffic adjacent to the project site.

18. CCA's weekly safety meeting will be attended by your own site personnel unless you conduct your own safety meeting and file the minutes if same with CCA.

19. Subcontractor agrees to comply with all requirements for segregation of trash and compliance with all other dumping regulations imposed upon Contractor. In the interest of safety, Contractor may waive notice requirements should Subcontractor fail to provide clean up services.

20. Subcontractors shall provide weekly reports on a weekly basis (by 10:00 a.m. next Monday) attend meetings as required, and turn in request for quotation within 10 days of receipt.

21. The Contractor shall give the Subcontractor control points and set up building corner, from these control points the Subcontractor shall establish control lines and will be responsible for layout of this work from these lines.

22. SAFETY

Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the work is its responsibility, even if Contractor establishes a safety program for the entire project. Subcontractor shall establish and implement safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by Contractor and Owner, and insurance companies, including, but not limited to, any requirements imposed by the Contract documents.

Subcontractor accepts complete responsibility for the health and safety of its employees (its subcontractor's employees); the protection of the work; compliance with all applicable health and safety laws, including the regulations and standards of the Occupational Safety & Health Act of 1970 ("OSHA"), as amended. Subcontractor further agrees to indemnify Contractor and Owner against all claims for injury to persons or property, and against any fines and penalties if any such persons present on the project are using marijuana, illegal drugs, or alcohol.

The taking of blood, urine, or saliva for testing may be required from any Contractor or Subcontractor's employee on the project who is reasonably suspected of being under the influence of drugs, alcohol, or who is involved in or causes an accident.

Initial: _____

Initial: _____

Chancery Building                                                    EXHIBIT G
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances
               SUBCONTRACTOR/SUPPLIER'S PARTIAL RELEASE OF LIEN
                                      AND
                              GENERAL RELEASE

State of _____

County of _____

KNOW ALL MEN BY THESE PRESENTS, THAT

WHEREAS, **Cherry Hill Construction, Inc.** (Subcontractor/Supplier), having its principal office at **8211 Washington Blvd. Jessup, MD 20794** and **China Construction America, Inc.** (Contractor), having its principal office at **525 Washington Blvd, Suite 2688, Jersey City, NJ 07310**, having heretofore entered into a certain Subcontract/Purchase Order, relating to the furnishing of materials, labor and/or equipment for the construction of **Chancery Building, Embassy of the People's Republic of China in the United States of America, Excavation, SOE and Construction Entrances** (Project) for **Embassy of the People's Republic of China in the United States of America** (Owner), located at **3505 International Place, NW, Washington DC 20008**

NOW THEREFORE, the Subcontractor/Supplier, for and in consideration of _____Dollars ($_____), and other good and valuable considerations, the receipt whereof is hereby acknowledged, which sum represents the full amount due to the Subcontractor/Supplier as of this _____ day of _____, 20 _____ (Release Date) under and pursuant to the above referenced Subcontract/Purchase Order, the Subcontractor/Supplier does hereby:

1. Certify to Contractor and Owner that all persons, firms, associations, corporations, or other entities furnishing labor, materials, equipment, or supplies to Subcontractor/Supplier with respect to the Subcontract/Purchase Order have been paid in full as of the Release Date, including any and all applicable federal, state, and local sales, use, excise, or similar taxes or import duties, licenses and royalties, and

2. Remise, release, waive, relinquish and forever quitclaim unto Contractor and Owner, its affiliates, successors and assigns, any and all manner of liens, claims or demands whatsoever against Contractor and Owner, which Subcontractor/Supplier ever had, now has, or which it or its affiliates, successors or assigns hereafter can, shall or may have upon any portion of the lands of Owner or buildings thereon standing, for labor, material or equipment furnished under the Subcontract/Purchase Order, as of the Release Date, and

3. Further remise, release and forever discharge Contractor and Owner, their affiliates, successors and assigns of and from any and all manner of liens, claims, demands, and causes of action whatsoever against Contractor and Owner which Subcontractor/Supplier ever had, now has, or which it or its affiliates, successors or assigns hereafter can, shall or may have for, upon or by reason of any matter, cause of thing whatsoever arising under or out of the Subcontract/Purchase Order, as of the Release Date, and

4. Agree to indemnify and save harmless Contractor and Owner, their affiliates, successors or assigns, against all loss, cost, damage or expense (including, but not limited to attorney's fees) by reason of any and all manner of liens, claims or demands which anyone may have for labor performed, for material or equipment furnished under the Subcontract/Purchase Order, as of for, upon or by reason of any matter, cause or thing whatsoever arising under or out of the Subcontract/Purchase Order, as of the Release Date.

IN WITNESS WHEREOF, Subcontractor/Supplier has duly caused in these presents to be signed and attested by its duly authorized owner, partner or officer (and, if a corporation, its corporate seal to be hereunto affixed) on the _____ day of _____, 20____.


_____   _____   _____      _____
(Print name)                        (Signature)                         (Title)                              (Company seal)

Sworn to before me this _____ day of _____, 20_____.


By_____

Notary Public
(Notary Seal)

Chancery Building
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

## Unit prices:

The bidder is required to propose the following unit costs on the following items of work that would be performed under this contract. Prices should be given for additions to the base bid scope of work. Prices shall be used for additions to the base contract and shall not be construed for usage for any items, which is part of the base contract. Unit prices shall include all costs including charges for materials, labor, equipment, fees, taxes, insurance, bonding, overhead, profit, etc.

| Item | Unit | Unit Price ( in $) |
|---|---|---|
| Authorized additional excavation in soil | C.Y. | 35 (minor, footing, undercut) 20 (mass) |
| Authorized additional excavation in rock | C.Y. | 182 (minor, footing, undercut) 80 (mass) |
| Removal of contaminated soil, per Section 02200 | C.Y. | 80 |
| Additional soil nail | Per nail | 1,500 |
| Elimination of soil nail | Per nail | 850 |
| Additional rock bolt | Per bolt | 900 |
| Elimination of rock bolt | Per bolt | 750 |
| Additional secant pile | Per pile | 3,500 |
| Elimination of secant pile | Per pile | 2,000 |
| Installation of additional inclinometer | Per unit | 3,500 |
| Installation of additional DMP-1 | Per unit | 500 |
| Installation of additional DMP-2 | Per unit | 300 |
| Elimination of inclinometer | Per unit | 3,100 |
| Elimination of DMP-1 | Per unit | 400 |
| Elimination of DMP-2 | Per unit | 200 |
| Underpinning pits (assume 3 feet deep) | S.F. | 150 |
| Additional round of instrumentation readings | Per week | 1,200 |
| Additional tieback | Per tieback | 5,500 |
| Elimination of tieback | Per tieback | 3,900 |
| Excavation for Drainage Trench (10" deep 1'8" wide) | Per LF | 20 |

Chancery Building                                                    EXHIBIT I
Embassy of the People's Republic of China in the United States of America
Excavation, SOE and Construction Entrances

### List of Major Sub-subcontractors and Suppliers

Secant Wall -    Berkel
Nails -          Nicholson Construction Co.
Blasting -       Air Power, Inc.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

Cherry Hill Construction, Inc.
8211 Washington Boulevard
Jessup, Maryland 20794-0356

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

American Home Assurance Company
70 Pine Street
New York, NY 10270

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Joseph C. Kovars
Jay N. Bernstein
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
Tel: 410-685-1120

Case: 1:07-cv-00810
Assigned To : Lamberth, Royce C.
Assign. Date : 5/3/2007
Description: Contract

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
    Plaintiff

● 3 Federal Question
    (U.S. Government Not a Party)

○ 2 U.S. Government
    Defendant

● 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ● 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ◉ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☒ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. Section 1332(a)(1); suit by subcontractor to recover outstanding contract monies due from surety under payment bond

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** 547,123.60   Check YES only if demanded in complaint
**JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE May 2, 2007   SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

