UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERRY HILL CONSTRUCTION, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-810 (RCL) |
| ) | |
| AMERICAN HOME ASSURANCE CO. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Memorandum Opinion and Order**

INTRODUCTION

Before the court is a motion to dismiss, or in the alternative to stay the proceedings, by defendant American Home Assurance Co. (AHAC). AHAC's motion to dismiss is hereby DENIED. The alternative motion to stay the proceedings pending a determination of the payment due and owing under the alternative dispute resolution provisions of the underlying subcontract is GRANTED.

Background

AHAC issued a payment bond to contractor China Construction America, Inc. (CCA) in order to insure the payment of CCA's subcontractors on a construction project for the Embassy of the People's Republic of China. CCA subcontracted with plaintiff Cherry Hill Construction, Inc. (hereinafter "Cherry Hill") to provide over $10 million in excavation and other services on the Embassy project. Cherry Hill claims that it has completed its "work in accordance with the

terms and provisions of the Subcontract," but that CCA has failed to pay an outstanding balance of $547,123.60, plus interest. Cherry Hill claims that this balance is "due and owing," and has sued AHAC as CCA's surety to recover that sum under the payment bond.

The subcontract requires Cherry Hill to mediate and, if necessary, arbitrate any disputes with CCA, including payment disputes, prior to initiating legal or equitable action. AHAC is not a party to the subcontract. The payment bond to which AHAC is a party, however, explicitly provides for judicial resolution of disputes. CCA is not named as a defendant in Cherry Hill's suit, possibly because of this binding mediation and arbitration clause in the subcontract.

MOTION TO DISMISS

In its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, AHAC argues that Cherry Hill's claim is not ripe because AHAC's obligation, as a surety, to pay Cherry Hill arises only after CCA's obligation to pay Cherry Hill is established. AHAC further argues that the plaintiff must establish CCA's obligation to pay at mediation or arbitration per the clause in the subcontract before an action against AHAC can be brought in court.

AHAC is suggesting that, because of its relationship with CCA, AHAC is protected against a direct suit by CCA's subcontractor, Cherry Hill, because the contract between CCA and Cherry Hill contains an arbitration clause. This argument fails to acknowledge that Cherry Hill consented to arbitrate only with CCA, while its payment bond with AHAC explicitly contemplates that disputes will be litigated in the courts. *See Bailey v. Fed. Nat. Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000) (noting that "arbitration is predicated upon the consent of the parties to a dispute"); *Masurovsky v. Green*, 687 A.2d 198, 205 (D.C. 1996) (finding "the

presumption in favor of arbitration attaches only after the trial court has determined that a valid agreement to arbitrate exists"). Moreover, "[t]he settled rule . . . is that unless there is an express agreement to the contrary, the creditor may sue the surety directly without first obtaining a judgment against the principle debtor or even making a demand upon it." *United States Indus., Inc. v. Blake Constr. Co., Inc.*, 671 F.2d 539, 551-52 (D.C. Cir. 1982). Also, the concern that arbitration may proceed longer than the one-year time limit in which Cherry Hill must assert its claim under the payment bond, thus possibly precluding any claim at all under the bond, militates against dismissing this suit. *See United States for Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012-13 (5th Cir. 1976) (granting a stay of the proceedings rather than dismissing the suit because the subcontractor should not be required to await the outcome of arbitration proceedings before instituting its suit under the Miller Act because if arbitration proceeded for more than one year the subcontractor's Miller Act claim would be barred by the statute of limitations). As such, the motion to dismiss cannot be granted.

MOTION TO STAY THE PROCEEDINGS

The question of whether it is, nonetheless, appropriate for the court to grant a stay remains. It is up to the court to determine if a separate and independent parallel cause of action by Cherry Hill against AHAC is appropriate and may go forward OR if it is appropriate to stay the action against the surety on the bond to allow the disputes on the merits to be resolved between Cherry Hill and China Construction via mediation and arbitration. *See Agostini Bros. Bldg. Corp. v. United States*, 142 F.2d 854 (4th Cir. 1944) (finding the lower court's denial of defendant's motion to stay the proceedings until arbitration could be had pursuant to the underlying contract to be improper); *see also United States v. Bregman Constr. Corp.*, 256 F.2d

851 (7th Cir. 1958); *United States for Use and Benefit of DeLay & Daniels, Inc. v. Amer. Emp. Ins. Co. of Mass.*, 290 F. Supp. 139, 140 (D.C.S.C. 1968) (holding the subcontractor was not entitled to proceed against the general contractor's surety without first complying with the arbitration provision of the subcontract); *United States for Use and Benefit of Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 214 F. Supp. 949, 950 (D.C. Puerto Rico 1963) (finding that "[t]he fact that the defendants here are the sureties on the contractor's bond and that these are not parties in the subcontracts which contain the arbitration clause in question here does not in any way preclude them from obtaining a stay of the action until the contractor's right to compel arbitration is given effect"); *Modern Brokerage Corp. v. Mass. Bonding & Ins. Co.*, 54 F. Supp. 939 (D.C.N.Y. 1944) (finding that while a surety is not a party to the contract, the surety has a right to demand that the action be stayed until the arbitration of disputes arising under the contract is given effect).

  The Federal Arbitration Act, 9 U.S.C. § 3, states that if the Court is satisfied that "the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [it] *shall* . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement" (emphasis added). Under this provision, "a court must stay, and not dismiss, an action." *Piltch v. Merrill Lynch*, 714 F. Supp. 537, 538-39 (D.D.C. 1989). Moreover, federal policy strongly favors enforcement of arbitration clauses. *See, e.g., Bryson v. Gere,* 268 F. Supp. 2d 46, 51 (D.D.C. 2003) *citing Moses H. Cone Mem'l. Hosp. V. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F. Supp. 240, 243 (D.C.N.Y. 1973) (noting that federal policy is to construe arbitration clauses liberally, to find that they cover disputes reasonably contemplated by the language, and to resolve doubts in favor of arbitration).

Cherry Hill, in contrast, claims that a stay of the proceedings is improper because "the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed," noting that AHAC, which is the movant party here, is not a party to the agreement to arbitrate. *IDS Life Ins. Co. v. SunAmerica Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). However, the 7th Circuit went on in *IDS Life Ins. Co.* to note that a party to an arbitration agreement cannot be allowed to sue a related party with which it has no arbitration agreement in the hope that the claim against the other party will be adjudicated first and have a preclusive effect in the arbitration. *Id.* at 530; *see also Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1308 (1st. Cir. 1973) (noting a contractual obligation to arbitrate cannot be rendered meaningless by the expedient of bringing suit on a payment bond). This is the circumstance presented here. The alternative dispute resolution clause would be meaningless if Cherry Hill could simply claim against the payment bond in any payment dispute with CCA. Such a result would also be contrary to the court's precedent favoring enforcement of alternative dispute resolution provisions. *See Bryson v. Gere*, 268 F. Supp. 2d at 51.

Cherry Hill further argues that courts in the District of Columbia have long allowed sureties to impose reasonable conditions on its liability, so AHAC cannot complain for not having imposed as a condition a requirement that the subcontractor-claimant resolve its dispute with the general contractor per the process mandated by the subcontract. *See U.S. Plywood Corp. v. Cont'l. Cas. Co.*, 157 A.2d 286, 289 (D.C. 1960). A motion to stay proceedings pending arbitration was granted, however, by another jurisdiction in a similar claim under the Miller Act, with the court opining that if the defendant's motion to stay were denied, the arbitration mandate in the subcontract would be rendered meaningless, while also noting that

"[i]t seems grossly inefficient to have parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results." *U.S. ex rel. Tanner v. Daco Const., Inc.*, 38 F. Supp. 2d 1299, 1306 (N.D.Okla. 1999). Indeed, in the interests of judicial economy, it is more efficient for the contractor and subcontractor to arbitrate the underlying dispute before requiring the surety to litigate the dispute in federal court. *U.S. ex rel. MPA Const., Inc. v. Specialty Ins. Co.*, 349 F. Supp. 2d 934 (D.Md. 2004). After all, "[t]he purpose of the Federal Arbitration Act is to facilitate and expedite arbitration to accord with the parties' intentions and to ease court congestion." *Portland Constr. Co.,* 532 F.2d at 1013, *citing Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 1103 (7th Cir. 1967).

While true that "given their remedial nature, payment bonds should be liberally interpreted in favor of unpaid subcontractors and suppliers" (*See in re: M&T Electrical Contractors, Inc.*, 267 B.R. 434, 446 (D.D.C. 2001)), it must first be determined through mediation and, if necessary, arbitration that Cherry Hill is in fact an unpaid subcontractor and what amount is "due and owing." The mediation and arbitration to which Cherry Hill and CCA bound themselves in the Subcontract is indeed, as AHAC claims, the proper forum for those parties to resolve such questions as (1) whether Cherry Hill has in fact fulfilled all its contractual obligations under the subcontract, (2) whether the payment Cherry Hill demands may have been properly held as retainage under the subcontract, and (3) whether the sum demanded by Cherry Hill is subject to any offsets or deductions. *See Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304 (1st. Cir. 1973) (holding that where a subcontractor's claim against the general contract and its performance bond surety involved a question of fact as to how much money, if any, was owing to the subcontractor, there was a dispute within the meaning of the arbitration clause of the subcontract and that the suit on the performance bond should be stayed pending arbitration).

While Cherry Hill correctly asserts that its claim against the surety is independent of its claim against the debtor, *see United States Indus. Inc.,* 671 F.2d at 551-52, AHAC's joint and several liability with CCA under the payment bond is dependent on a finding of an actual payment obligation of CCA to Cherry Hill and CCA's refusal to pay that obligation. *See in re: M&T Electrical Contractors, Inc.,* 267 B.R. at 446, *citing Courson v. Simpson*, 251 Va. 315, 468 S.E. 2d 17, 20 (1996) (noting that the surety is obligated to pay only when the obligor fails to timely pay the obligee).

Cherry Hill addresses AHAC's position that Cherry Hill's claim against the payment bond is a "blatant attempt to circumvent its contractual obligations to mediate or arbitrate payment disputes with CCA" with the retort that it is more accurate to state that "AHAC's motion is a blatant attempt to deprive Cherry Hill of the right unequivocally conferred to it by the terms of the bond drafted by AHAC, to litigate its payment bond claim against the surety." A stay of the proceedings will not deprive Cherry Hill of any such right here, however, as Cherry Hill will still be able to litigate its payment bond claim against the surety once the amount that is "due and owing" by CCA has been determined through mediation or arbitration.

CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss is DENIED. The defendant's alternative Motion to Stay the Proceedings is GRANTED.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, November 27, 2007.